The STATE OF IDAHO, Plaintiff,

and

The Membership of the Heyburn State Park Leaseholders Association, Plaintiff/Intervenors,

v.

The Honorable Cecil D. ANDRUS, et al., Defendants,

and

The Coeur d'Alene Tribe of Indians, Defendant/Intervenor.

The UNITED STATES of America, Plaintiff,

v.

The STATE OF IDAHO, et al., Defendants.

Civ. Nos. 1-76-231, 77-2058.

United States District Court, D. Idaho.

Aug. 10, 1982.

David H. Leroy, Atty. Gen. of Idaho, Boise, Idaho, for State of Idaho.

David W. Hyde, Martin, Chapman, Martin & Hyde, Boise, Idaho, for Leaseholder defendants.

Guy Hurlbutt, U.S. Atty., D. Idaho, Boise, Idaho, for defendants Andrus, et al.

Robert D. Dellwo, Dellwo, Rudolf & Schroeder, Spokane, Wash., for the Coeur d'Alene Tribe of Indians.

MEMORANDUM DECISION

CALLISTER, Chief Judge.

This matter is before the Court on remand from the Ninth Circuit to determine whether the Coeur d'Alene Indian Tribe (Tribe) has a beneficial interest in the patent of June 29, 1911, by which the United States conveyed to the State of Idaho the land now comprising Heyburn State Park. The Court has already ruled that the State

has not violated the terms of the 1911 patent. The Tribe and the United States appealed that decision. Shortly thereafter, the United States moved for, and was granted, dismissal of its appeal. The State then moved to dismiss on the ground that the Tribe, now the sole appellant, had no beneficial interest in the Heyburn land. The Ninth Circuit remanded the case for consideration of that issue.

In 1873, the Coeur d'Alene Indian Reservation, comprising 590,000 acres, was established by Executive Order of President Grant. In 1906, Congress enacted the Coeur d'Alene Allotment Act, 34 Stat. 335, authorizing the Secretary of the Interior to allot 160 acres of land to each member of the Tribe. The surplus unallotted lands were then to be opened up to settlement and entry under the provisions of the Homestead Laws, 34 Stat. 335, 336.

Before the Reservation was opened for settlement, however, Congress, by the Act of 1908, 35 Stat. 70, withdrew the Heyburn land, comprising 6,774.65 acres, from allotment and sale. The 1908 Act authorized the Secretary of the Interior to convey the land to the State to be maintained as a public park:

That the land in the following subdivisions now embraced in the Coeur d'Alene Indian Reservation in Idaho, to-wit: Sections one, two, and twelve, township forty-six north, range four west, Boise meridian; sections thirty-five and thirty-six, township forty-seven, north, range four west, Boise meridian; all of those portions of sections two, three, four, five, six, seven, eight, nine, ten, and eleven, township forty-six north, range three west, Boise meridian, lying south and west of the Saint Joe River in said township; all of those portions of sections thirty-one and thirty-two, township forty-seven north, range three west, Boise meridian, lying south and west of the Saint Joe River in said township is reserved and withdrawn from allotment and settlement, and the Secretary of the Interior is hereby authorized to convey any part thereof to the State of Idaho to be main-

tained by said State as a public park, said conveyance to be made for such consideration and upon such terms and conditions as the Secretary of the Interior shall prescribe. The proceeds of such sale shall be deposited in the Treasury of the United States for the use and benefit of the Coeur d'Alene Indians in such manner as Congress shall hereafter prescribe.

The Heyburn land was conveyed to the State for $11,379.17 on June 28, 1911, under a patent setting forth the following conditions:

WHEREAS, THE ACT OF CONGRESS APPROVED APRIL 30, 1908—35 STAT., 70, 78—, AUTHORIZES THE CONVEYANCE TO THE STATE OF IDAHO OF THE FOLLOWING DESCRIBED SUBDIVISIONS OR ANY PART THEREOF, FORMERLY A PART OF THE COEUR D'ALENE INDIAN RESERVATION IN IDAHO . . . .

WHEREAS, BY APPRAISEMENT UNDER DIRECTION OF AND APPROVED BY THE SECRETARY OF THE INTERIOR, THE PURCHASE PRICE TO BE PAID BY THE STATE OF IDAHO FOR THE SAID LANDS HAS BEEN FIXED AT $11,379.17, AND SAID SECRETARY HAS DIRECTED THAT SAID LANDS BE CONVEYED TO THE STATE, UPON PAYMENT BY IT OF SAID SUM, UPON THE FOLLOWING TERMS AND CONDITIONS, TO-WIT: THE LANDS ARE TO BE BY SAID STATE HELD, USED, AND MAINTAINED SOLELY AS A PUBLIC PARK, AND FOR NO PURPOSE INCONSISTENT THEREWITH, THE TITLE TO REVERT TO THE UNITED STATES OF AMERICA, ABSOLUTELY IF THE SAID LANDS, OR ANY PORTION THEREOF, SHALL NOT BE, OR SHALL CEASE TO BE, SO USED AND MAINTAINED BY THE STATE, OR SHALL BE ALIENATED BY SAID STATE; AND IN EVENT OF THE VIOLATION BY THE STATE OF ANY OF THE CONDITIONS OR COVENANTS HEREIN CONTAINED, OR ITS FAILURE TO CARRY OUT THE SAME, THEN THE UNITED STATES MAY

THEREUPON OR AT ANY TIME THEREAFTER ENTER UPON, AND INTO THE EXCLUSIVE POSSESSION OF, THE SAID LANDS AND THE WHOLE THEREOF, AND OF ALL IMPROVEMENTS THEREON, AND HAVE, HOLD, SEIZE, AND POSSESS THE SAME; EXPRESSLY EXCEPTING AND RESERVING TO THE UNITED STATES OF AMERICA, HOWEVER, ALL VALUABLE MINERAL DEPOSITS IN THE SAID LANDS, TOGETHER WITH THE EXCLUSIVE RIGHT TO MINE AND REMOVE THE SAME, AND TO PERMIT, LICENSE, OR AUTHORIZE THE MINING AND REMOVAL THEREOF, IN SUCH MANNER, UPON SUCH TERMS, AND UNDER SUCH CONDITIONS AS THE CONGRESS MAY PRESCRIBE; AND ALSO THE RIGHT TO FLOOD OR OVERFLOW THE SAID LANDS, AND TO PERMIT, LICENSE, OR AUTHORIZE THE SAME, FOR DOMESTIC, IRRIGATION, AND POWER PURPOSES . . . .

The issue faced by this Court is whether the Tribe has a beneficial interest in the right of re-entry created in the 1911 patent. The State argues that the 1908 Act extinguished the Tribe's right to the Heyburn land, and that the right of re-entry belongs solely to the United States. The United States, in an amicus curiae brief, and the Tribe argue that the 1908 Act should be read to place the United States as trustee of the Tribe for the purpose of selling the Heyburn land to the State. Thus, the right of re-entry was created by the trustee for the benefit of the Tribe.

In its examination of these arguments, the Court begins with the rule that "when Congress has once established a reservation, all tracts included within it remain a part of the reservation until separated therefrom by Congress." *United States v. Celestine,* 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195 (1909). The threshold issue faced by the Court is whether Congress intended, by the Act of 1908, to diminish the reservation lands. In determining this intent, the Court is cautioned to follow

the general rule that "[d]oubtful expressions are to be resolved in favor of the weak and defenseless people who are the wards of the nation, dependent upon its protection and good faith." *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 174, 36 L.Ed.2d 129, 93 S.Ct. 1257 [1263] (1973); quoting *Carpenter v. Shaw,* 280 U.S. 363, 367, 74 L.Ed. 478, 50 S.Ct. 121 [ ] (1930).

*Rosebud Sioux Tribe v. Kneip,* 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977).

But as the *Rosebud* case makes clear, [t]he "general rule" does not command a determination that reservation status survives in the face of congressionally manifested intent to the contrary. *DeCoteau v. District County Court* [420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300] *supra.* In all cases, "the face of the Act," the "surrounding circumstances," and the "legislative history," are to be examined with an eye toward determining what congressional intent was. *Mattz v. Arnett, supra* [412 U.S. 481] at 505. 37 L.Ed.2d 92, 93 S.Ct. 2245 [at 2258].

*Id.* at 587, 97 S.Ct. at 1363.

With these guidelines in mind, the Court will now turn to an examination of the "face of the Act, the surrounding circumstances and the legislative history."

The operative language of the 1908 Act provides that the Heyburn lands shall be reserved and withdrawn from allotment and settlement, and the Secretary of the Interior is hereby authorized to convey any part thereof to the State of Idaho to be maintained by said State as a public park, said conveyance to be made for such consideration and upon such terms and conditions as the Secretary of the Interior shall prescribe. The proceeds of such sale shall be deposited in the Treasury of the United States for the use and benefit of the Coeur d'Alene Indians in such manner as Congress shall hereafter prescribe.

The Act does not expressly state that the Secretary would be acting as a trustee for the Tribe in the sale of the land to the

State. The Court finds this significant in that the 1906 Allotment and Sale Act, from which the Heyburn land was withdrawn by the 1908 Act, did state that "The purpose of this act [is] merely to have the United States act as trustee for said Indians in the disposition and sale of said lands ...." The 1906 Allotment and Sale Act provided that any unallotted surplus lands would be sold to settlers under the Homestead Laws, 34 Stat. 335, 336. The fact that these sales would occur, if at all, in the future for unknown prices was a good reason for the United States to act as trustee. But the Heyburn land sale transaction was much different, and it is this difference, discussed below, that the caselaw deems significant in finding a congressional intent to diminish reservation lands.

In consideration for the "withdrawal" of the Heyburn land under the 1908 Act, the Tribe was to receive a sum certain consisting of the appraised value of the Heyburn land. This is shown by the legislative history contained at 41 CONG.REC. 3,715 (1907), which added a provision that the Tribe "be paid the appraised value of the Land."

The fact that the final draft of the Act stated that the sale would proceed on "such terms and conditions as the Secretary of the Interior shall prescribe" does not change the earlier expressed desire to fully compensate the Indians with a sum certain representing the appraised value of the land. Indeed, the evidence indicates that the final sale price actually paid represented the appraised value of the Heyburn lands in fee simple; the appraised value does not appear to represent a price discounted by the right of re-entry.[1]

The legislative history also indicates that it was the intent of Congress to sell the entire Heyburn land acreage; there was no uncertainty about the amount of land that would be sold. Although the final draft of the 1908 Act gives the Secretary the authority to "convey any part thereof to the State of Idaho," the legislative history indicates that Congress contemplated selling the entire Heyburn land acreage. Correspondence in Senate Report 251, 60th Cong., 1st Sess. (1908) from the Commissioner of Indian Affairs to the Department of Interior ends with the following recommendation:

We respectfully recommend the setting apart of these lands for a park, and also recommend that the acreage specified in the bill should not be decreased, as it was selected with much care, and no lands are included that are not necessary and appropriate for the purpose to which it is proposed to dedicate them.

In summation, Congress clearly contemplated the sale of the entire Heyburn land acreage for a sum certain representing the appraised value of the land. The evidence further indicates that the United States originally intended to purchase the Heyburn lands to establish a national park. Congress was worried, however, about the maintenance costs of such a park and decided to pass legislation conveying the land to the State. Cox depo., pp. 27–31.

1. The evidence indicates that all parties wanted the land to remain a park so that the lumber companies would not be able to gain control of the property. Apparently, the $11,379.17 figure represented the fair market value of the land. *See* exhibits attached to Tribe's second request for admissions to Heyburn State Park Leaseholders Association; United States' response to State's request for admissions, Nos. 20, 21; S.Rep. No. 251, 60th Cong., 1st Sess. (1908).

The appraisal reports do not discuss a discounted value for the right of re-entry. This is probably due to the fact that the appraisal was done almost two years before the right of re-entry language was included in the patent of 1911. Indeed, the inclusion of the right of re-entry language by the Secretary was apparently a surprise even to the Senate. Idaho Senator Weldon Heyburn argued that the right of re-entry language was contrary to the intent of Congress: Heyburn introduced Senate Joint Resolution 114 which directed the Secretary to issue a patent without the right of re-entry condition. The resolution passed the Senate, but Heyburn died shortly thereafter. Without Heyburn's leadership, the resolution died in the House. *See* 48 Cong.Rec. 8,037–8,038 (1912), United States' response to State's request for admissions No. 22(a)–(e); Deposition of Cox, pp. 155–156.

All of these circumstances indicate that the $11,379.17 sales price represented the fair market value of the Heyburn land without taking into account the right of re-entry.

The transaction contemplated by the 1908 Act is thus identical in substance to a purchase of a known amount of Indian lands by the United States for a sum certain. Such a transaction is persuasive evidence of a congressional intent to extinguish the Tribe's rights to the Heyburn lands through the 1908 Act. *Compare DeCoteau v. District County Court,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975) (payment of sum certain was important factor in finding relinquishment of Tribe's right to land) *with Mattz v. Arnett,* 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92 (1973) (consideration of uncertain future sales of land to settlors was important factor in finding that Tribe retained interest in land).

Because the 1908 Act completely withdrew the Heyburn land from the reservation, the State and the United States were free to thereafter bargain for the inclusion of a right to re-entry clause in the patent. The language of the patent itself is further evidence that the 1908 Act extinguished the Tribe's rights to the Heyburn land:

> WHEREAS, THE ACT OF CONGRESS APPROVED APRIL 30, 1908—35 STAT., 70, 78—, AUTHORIZES THE CONVEYANCE TO THE STATE OF IDAHO OF THE FOLLOWING DESCRIBED SUBDIVISIONS OR ANY PART THEREOF, FORMERLY A PART OF THE COEUR D'ALENE INDIAN RESERVATION IN IDAHO .... (emphasis added)

The patent goes on to vest the right of re-entry in the "United States, absolutely." There is no language in the patent that the United States was acting as a trustee for the Tribe.

All of these circumstances convince the Court that Congress, through the 1908 Act, intended to extinguish the Tribe's interest in the Heyburn lands. The United States was therefore not acting as the Tribe's trustee in the disposal of those lands. Thus, the Tribe does not have a beneficial interest in the right of re-entry.

The Tribe argues that even if the 1908 Act extinguished their rights to the Heyburn land, they are nevertheless a third party beneficiary of the 1911 patent which created the right of re-entry. The right was created, the Tribe argues, to protect the Tribe's traditional camping and fishing activities on the Heyburn lands.

Idaho law contains a statutory recognition of the right of a third party to maintain an action on a contract executed for his benefit. Idaho Code Section 29–102 provides:

> A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.

This statutory recognition of third party beneficiary actions was elaborated upon by the Idaho Supreme Court in *Stewart v. Arrington Construction Co.,* 92 Idaho 526, 532, 446 P.2d 895 (1968):

> To begin with, the contract itself must express an intent to benefit decedent or appellants.... This intent must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered.

There is no intent to benefit the Tribe expressed on the face of the 1911 patent. The Court can find no ambiguity in the 1911 patent which would require the examination of extrinsic evidence. But even if the patent is construed as being ambiguous, the circumstances surrounding the Heyburn land sale do not support the Tribe's claims.

The legislative history of the 1908 Act indicates that the Heyburn land was withdrawn to create a park from which the public would benefit. *See* S.Rep. 251, 60th Cong., 1st Sess. (1908)[2] The Court can find no intent to benefit the Tribe in a manner

---

**2.** The Senate Report contains correspondence from the Office of the Commissioner of Indian Affairs to the Department of the Interior which provides in pertinent part:
  [W]e would say that the Indians in their council meeting held on the 27th instant unanimously voted in favor of the establishment of this park, as it is a favorite camping and fishing place for them as well as for the white people in this vicinity.

separate and apart from the obvious desire to benefit the public. Where the group to be benefited is large and vaguely defined, individual members are no more than incidental beneficiaries, and no rights are created in them by virtue of the contract at issue. *See Stewart v. Arrington Construction Co., supra.* The Tribe is therefore not a third party beneficiary of the 1911 patent.

The Tribe next argues that the Act of May 19, 1958, P.L. 85–420 §§ 1–3, 72 Stat. 121, "restored" the right of re-entry to the Tribe even if the United States did have the sole interest in the right. The 1958 Act provides as follows:

> Sec. 1. All lands now or hereafter classified as vacant and undisposed-of ceded lands (including townsite lots) on the following named Indian reservations are hereby restored to tribal ownership, subject to valid existing rights:

| Reservation and State | Approximate Acreage |
|---|---|
| Klamath River, California ........ | 159.77 |
| Coeur d'Alene, Idaho ............ | 12,877.65 |
| Crow, Montana ................ | 10,260.95 |
| Fort Peck, Montana ............. | 41,450.13 |
| Spokane, Washington ............ | 5,451.00 |

> Provided, That such restoration shall not apply to any lands while they are within reclamation projects heretofore authorized.
>
> Sec. 2. Title to the lands restored to tribal ownership by this Act [this note] shall be held by the United States in trust for the respective tribe or tribes, and such lands are hereby added to and made a part of the existing reservations for such tribe or tribes.
>
> Sec. 3. The lands restored to tribal ownership by this Act [this note] may be sold or exchanged by the tribe, with the approval of the Secretary of the Interior.

There is nothing in the Act to indicate that the Heyburn land has been classified as "vacant and undisposed of ceded lands." Not only has the Heyburn land been "disposed of" (by sale to the State), it has also been used as a park and would therefore not appear to be classified as "vacant." A fair reading of the 1958 Act would indicate that it was designed to restore to tribal ownership those unallotted lands which had been declared surplus under the 1906 Allotment Act, 34 Stat. 345, but which had never been "disposed" of by the United States. The Heyburn lands were, however, withdrawn from the 1906 Act. Thus, the Tribe's argument that the 1958 Act supports their claim to an interest in the right of re-entry is without merit.

The Tribe's final argument is that it never agreed to the sale of the Heyburn land. The Tribe points to Article 5 of the Act of March 3, 1891, 26 Stat. 989, as supporting their claim. Article 5 reads as follows:

> In consideration of the foregoing cession and agreements, it is agreed that the Coeur d'Alene Reservation shall be held forever as Indian land and as homes for the Coeur d'Alene Indians, now residing on said Reservation, and the Spokane or other Indians who may be removed to said Reservation under this agreement, and their posterity: And no part of said Reservation shall ever be sold, occupied, open to white settlement, or otherwise disposed of without the consent of the Indians residing on said Reservation.

Contrary to the Tribe's allegations, there is some indication that an agreement was reached. The correspondence set forth in note 2 of this opinion indicates that,

> The Indians in their council meeting held on the 27th instant unanimously voted in favor of the establishment of this park . . . .

Even assuming that no agreement had been reached, the Heyburn land sale would still be valid. The Supreme Court in *Rosebud Sioux Tribe v. Kneip, supra,* faced this very issue and held that a lack of consent was not fatal to a United States sale of Indian land:

> By the time of the first of these Acts, in 1904, Congress was aware of the decision of this Court in *Lone Wolf v. Hitchcock,* 187 U.S. 553, 47 L.Ed. 299, 23 S.Ct. 216 (1903), which held that Congress possessed the authority to abrogate unilaterally the provisions of an Indian treaty.

*Id.* 430 U.S. at 587–588, 97 S.Ct. at 1363–1364.

The Court originally allowed the Tribe to intervene to give them the opportunity to argue their claims regarding the Heyburn lands. The Court now holds that the Tribe does not have a beneficial interest in the right of re-entry created in the 1911 patent.